UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TAMMY LESTINGI,

                Plaintiff,

-against-

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

**MEMORANDUM AND ORDER**
Case No. 1:24-CV-6025

*Appearances*:
*For the Plaintiff:*
HAROLD SKOVRONSKY
Harold Skovronsky
1222 Avenue M, Suite 501
Brooklyn, NY 11230

*For the Defendants:*
ANNE M. ZEIGLER
NICKEITTA ZIMMERMAN
SHANNON FISHEL
SSA – Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

**BLOCK, Senior District Judge:**

      Plaintiff Tammy Lestingi seeks review of the Commissioner of the Social Security Administration's ("the Commissioner") denial of her application for Social Security Disability Insurance benefits under Title II of the Social Security Act. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Lestingi's motion is GRANTED to the extent that the case is remanded for further proceedings consistent with this decision; accordingly, the Commissioner's motion is DENIED.

                              **I.**    **Background**

      Lestingi suffers from long COVID, or post-acute sequelae of COVID-19 ("PASC"). Tr. at 46, ECF No. 4.[1] Specifically, Lestingi has been diagnosed with post-COVID chronic urticaria

---

[1] The Commissioner filed the administrative transcript of the proceedings before the Social Security Administration at ECF No. 4. All references to ECF No. 4 are denoted as "Tr. __."

(hives) and complains of brain fog/cognitive impairment. *Id*. at 358, 392. Lestingi has also been diagnosed with type II diabetes. *Id*. at 389.

Lestingi applied for Social Security Disability Insurance benefits on July 7, 2022, with an alleged disability onset date of June 27, 2022. *Id*. at 17. Lestingi claimed that she is disabled by her post-COVID urticaria and her diabetes. *Id*. at 63. Lestingi previously worked as a security guard at an elementary school, *id*. at 44, but has not worked in that capacity since June 2022. *Id*. at 19, 71.

After a hearing before an administrative law judge ("ALJ"), the ALJ issued a decision finding Lestingi not disabled. *Id*. at 14–27. The ALJ found that Lestingi had not engaged in substantial gainful activity since the alleged disability onset date and that her post-COVID urticaria and diabetes constituted severe impairments. *Id*. at 19. The ALJ found, however, that Lestingi is able "to perform a full range of work at all exertional levels," and, therefore, she is not disabled. *Id*. at 20–24.

The Appeals Council denied review of the ALJ's decision, *id*. at 1, and Lestingi thereafter commenced this action.

## II.    Discussion

District courts reviewing the Commissioner's determinations under 42 U.S.C. § 405(g) must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied."[2] *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). They may not conduct a *de novo* review or substitute their judgment for that of the ALJ, *see Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), reversing the ALJ "only if the

---

[2] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

factual findings are not supported by substantial evidence or if the decision is based on legal error," *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

The Commissioner employs a five-step inquiry to evaluate Social Security disability claims. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). At step one, the ALJ found that Lestingi had not engaged in substantial gainful activity since the alleged disability onset date. Tr. at 19. At step two, the ALJ concluded that Lestingi's post-covid urticaria and diabetes constituted severe impairments. *Id*. at 19–20. At step three, the ALJ found that these impairments did not meet or equal the severity of the specified impairments in the Listing of Impairments. *Id.* at 20. At step four, the ALJ conducted a residual functional capacity ("RFC") analysis, concluding that Lestingi "has the residual functional capacity to perform a full range of work at all exertional levels," including her past work, with minor non-exertional limitations. *Id*. at 20–24.

Lestingi now contends that the ALJ's RFC findings concerning her mental capacity and physical abilities are not supported by substantial evidence. She asserts that the ALJ erred in relying on the opinions of the State Agency medical consultants and the consultative examiner over those of her physicians, in failing to sufficiently develop the record, and in improperly discounting her brain fog.

The Court agrees that the ALJ erred in its determinations for two primary reasons: (1) for relying on contradictory findings and not developing the record in light of these inconsistencies, and (2) in making an RFC finding not supported by substantial evidence.

A claimant's RFC represents the most that can be done despite any limitations based on the record. 20 C.F.R. § 404.1545(a)(1). In making its determination, the ALJ correctly followed a

3

two-step process. Tr. at 21; *see* 20 C.F.R. § 404.1529(a). First, the ALJ assessed whether any medically determinable impairments could reasonably be expected to produce Lestingi's symptoms. Tr. at 21. Second, the ALJ assessed those symptoms to determine the extent to which they limited Lestingi's work-related activities. *Id*.

The ALJ determined that Lestingi's medically determinable impairments—her post-COVID urticaria and her diabetes—could be expected to cause only some of her alleged symptoms, and that Lestingi's statements concerning her symptoms were not entirely consistent with the medical evidence in the record. *Id*. One reason for this, the ALJ explained, is evidence in the record that Lestingi had worked since her alleged disability onset date. *Id*. Specifically, a report from a doctor's visit on July 18, 2022 (a few weeks after the alleged onset date) noted that Lestingi had asked "if she needs a note for work for [a medication] given that she sits at the front desk of a facility." *Id*. at 284. However, at step one, the ALJ had determined that Lestingi had *not* engaged in substantial gainful activity since her alleged onset date. *Id*. at 19; 20 C.F.R. § 404.1520(4)(i) ("At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled."). Thus, the ALJ's findings appear to contradict themselves.

The Seventh Circuit, considering a more modest contradiction, concluded that the ALJ had committed reversible error. *Poole v. Kijakazi*, 28 F.4th 792, 793 (7th Cir. 2022). There, the ALJ found that the claimant was both limited to sedentary work and could alternate all day long between sitting and standing every 15 minutes. *Id*. at 795–96. The Seventh Circuit explained that "the ALJ's decision rested on two contradictory findings, and so we reverse and remand this case to the agency for further proceedings." *Id*. at 793. Thus, at a minimum, the ALJ erred in using evidence of Lestingi having worked as a reason to conclude that she was not disabled despite

4

finding that she had not engaged in substantial gainful activity since the alleged onset date. *See id.* at 796.

An ALJ "has an affirmative obligation to develop the administrative record," *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996), which includes a duty to clarify the record when presented with inconsistencies. *Pope v. Barnhart*, 57 F. App'x 897, 899 (2d Cir. 2003) ("An ALJ has an independent duty to resolve ambiguities and inconsistencies."); *Lori S. v. O'Malley*, 727 F. Supp. 3d 78, 83 (D. Conn. 2024) ("An ALJ has a duty to develop the record where obvious inconsistencies exist."). Accordingly, the ALJ erred in failing to develop the record to resolve this inconsistency. On remand, the ALJ should develop the record to ascertain whether Lestingi has, in fact, engaged in substantial gainful activity.

The ALJ then reviewed Lestingi's medical records, noting that she had "gone into anaphylaxis and required emergency room treatment at least ten times in the previous year." Tr. at 21. Lestingi, however, had apparently not been hospitalized since the alleged onset date. *Id*. The ALJ explained that treatments for Lestingi's urticaria, including regular injections, were progressing well. *Id*. at 22. Regarding Lestingi's brain fog, the ALJ discounted Lestingi's symptoms as unsupported by the medical evidence because a physician "only advised the claimant to continue[] crossword puzzles and brain teasers." *Id*. The ALJ also described Lestingi's diabetes as "doing well." *Id*.

The ALJ then reviewed the opinions of the State Agency medical consultants, the consultative examiner, and Lestingi's physicians. *Id*. at 22–23. Dr. Tayab and Dr. Levit, State Agency medical consultants, opined that Lestingi had no exertional limitations. *Id*. at 66, 77. This is in contrast to Lestingi's treating physician, Dr. Cheek, who opined that Lestingi had significant exertional limitations. *Id*. at 387. For example, Dr. Cheek opined that Lestingi could

occasionally lift 10 pounds, frequently lift less than 10 pounds, stand or walk about four hours in an eight-hour day, and use her hands for fine motor activities only occasionally. *Id*. at 387–88. The ALJ discounted the opinion of Dr. Cheek and adopted the views of Drs. Tayab and Levit—that Lestingi could engage in "a full range of work at all exertional levels." *Id*. at 20, 22–23.

Although the ALJ does not explain this, a finding that Lestingi has the RFC to perform work at "all exertional levels" means the ALJ found that Lestingi can perform everything from "sedentary work" to "very heavy work." 20 C.F.R. § 404.1567; *Kaitlyn S. v. Comm'r of Soc. Sec.*, No. 20-CV-0728-MJR, 2021 WL 4077328, at *5 (W.D.N.Y. Sep. 7, 2021) ("By concluding that plaintiff could perform work at all exertional levels, the ALJ implicitly determined that plaintiff could also perform 'very heavy work,' which is defined as 'lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.'") (quoting 20 C.F.R. § 404.1567(e)). However, aside from the cursory conclusions of the state examiners, no record evidence supports such a conclusion. The ALJ, rather than supporting this finding with evidence, "appears to have assumed that a claimant who does not suffer any exertional limitations can be presumed to be capable of lifting and carrying 100 pounds occasionally and 50 pounds frequently." *Catalano v. Berryhill*, No. 17-CV-7120 (SN), 2018 WL 6437059, at *8 (S.D.N.Y. Dec. 7, 2018) (quotation omitted). As the Southern District explained, "[t]hat presumption is flawed, however, because "a person without any medically recognizable impairments may be unable to lift and carry such weights." *Id*. (quotation omitted). Furthermore, as the ALJ found, Lestingi has severe impairments, which make such a conclusion even less convincing. Tr. at 19.

In support of its conclusion, the ALJ noted that "the treatment records regularly show normal gait and no abnormalities on musculoskeletal examinations. The claimant has full range

6

of motion of all extremities and has good and equal strength and intact hand dexterity. She is also independent with her activities of daily living and continues to drive." *Id*. at 23. None of these findings, however, support the notion that Lestingi can perform work at "all exertional levels," including "very heavy work." *See Catalano*, 2018 WL 6437059, at *8 (explaining why similarly slight evidence cannot support a finding that claimant had the RFC to perform work at all exertional levels).

On the contrary, evidence in the record supports Lestingi's contention that she has a more modest RFC than the ALJ found. Evidence shows that Lestingi is an obese, diabetic woman who suffers from long COVID and brain fog. *Id*. at 406, 423. At the time of the ALJ's decision, she was 59 years old, which under agency regulations, means she was a "person of advanced age." 20 C.F.R. § 404.1563(e). Lestingi testified that she cannot comfortably stand for more than an hour without having to sit down, which Dr. Cheek's opinion would tend to support. *Id*. at 47, 387. As the ALJ noted, Lestingi had "gone into anaphylaxis and required emergency room treatment *at least ten times* in the previous year." *Id*. at 21 (emphasis added). It is difficult to believe that such a person could perform all work at any exertional level, including "very heavy work," and the Court cannot find evidence in the record to support such a conclusion.

Lestingi's mental limitations are also concerning. A September 2023 report from another personal physician, Dr. Muttreja, notes that Lestingi reports having "significant memory concerns." *Id*. at 401. Dr. Muttreja noted that "[i]f [Lestingi] does not write things down she does not remember them. She is always walking around with notepads to assist." *Id*. Dr. Muttreja then referred Lestingi for a cognitive evaluation—contrary to the ALJ's determination that Lestingi was only ever advised to do "brain teasers." *Id*. at 22, 401. Although Lestingi's mental

7

limitations are "non-exertional," they are nevertheless "relevant to Plaintiff's capacity to return to work[.]" *Lim v. Colvin*, 243 F. Supp. 3d 307, 317 (E.D.N.Y. 2017).

The Commissioner contends that the ALJ appropriately weighed the conflicting opinions of State Agency consultants, examiners, and Lestingi's physicians and it was within the discretion of the ALJ to conclude that Dr. Tayab's, Dr. Levit's, and Dr. Lambert-Doorn's opinions were more persuasive than Lestingi's physicians' opinions. The Commissioner is correct that the old treating physician rule was abrogated and that the ALJ is not required to defer to a claimant's treating physician's opinions. *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023). The ALJ must nevertheless assess medical opinions based on the factors set forth at 20 C.F.R. § 404.1520c, the most important of which are supportability and consistency. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5853 ("These final rules help eliminate confusion about a hierarchy of medical sources and instead focus adjudication more on the persuasiveness of the content of the evidence."); *see also Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (Noting that analysis under the new regulations is similar to the treating physician rule because, "under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned.").

The ALJ concluded that the assessments of Drs. Tayab, Levit, and Lambert-Doorn were "representative of the available medical evidence," and that Dr. Cheek's opinions were not. The significant record evidence of Lestingi's limitations, however, undermines the supportability and consistency of the opinion that she has no exertional limitations. Although it is for the ALJ to

weigh the evidence, for the reasons explained above, the ALJ's conclusion that Lestingi can "perform a full range of work at all exertional levels" is not supported by substantial evidence.

The Court further concludes that this error is not harmless. The ALJ made the determination that Lestingi could perform her past work as a security guard—which required her to be able to perform medium exertional work—based on its hypothetical posed to the vocational expert that Lestingi had no exertional limitations. Tr. at 23, 54. Because the RFC determination was not supported by substantial evidence, the ALJ's reliance on the vocational expert's conclusion was also erroneous. See *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion.").

The Court is cognizant of its limited role here: "the reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than [one] interpretation." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019). The Court concludes that the ALJ's findings concerning Lestingi's RFC, and thus her ability to perform her past relevant work, were not supported by substantial evidence. It may be the case that Lestingi is not disabled, but the Court is not in a position to make that determination. It is the duty of the ALJ to further develop the record and reweigh the evidence on remand in light of the Court's concerns.

### III.    Conclusion

Given the ample record support for some level of physical or mental limitations, the Court concludes that "no reasonable factfinder could have reached the same conclusion as the

9

ALJ" on the issue of Lestingi's RFC. *Schillo*, 31 F.4th at 69. The ALJ's disability determination is thus not supported by substantial evidence. This case is remanded for further proceedings consistent with this decision.

**SO ORDERED.**

    /S/ Frederic Block    
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
December 4, 2025